IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILHEMEINA MEHMI BAILEY,

    Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.
                                   /

No. C 07-03222 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security appeal, this order finds that neither the administrative law judge nor the Appeals Council erred in the decision to deny benefits to plaintiff. Accordingly, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

**1.   PROCEDURAL HISTORY.**

On August 29, 2002, plaintiff Wilhemeina Bailey applied for supplemental security income, alleging she was unable to work due to depression, anxiety, a personality disorder, asthma, hypertension, and back pain (AR 64–67). She had previously applied for social security income four times and was denied each time (*id.* at 24). Her fourth application was denied on June 21, 2002, by ALJ Robert P. Wenten. Her fifth and current application was

denied both initially (*id*. at 35) and upon reconsideration (*id*. at 41). An administrative hearing was timely requested (*id*. at 48).

On June 10, 2004, plaintiff had a hearing before ALJ Michael B. Blume (*id*. at 24 and 412). The ALJ rendered a decision on December 21, 2004, finding that plaintiff was not disabled (*id*. at 21 and 412). Plaintiff requested administrative review. The Appeals Council denied the request (*id*. at 10). Plaintiff filed this action on June 16, 2007, seeking judicial review pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for summary judgment.

**2.    TESTIMONY AT THE ADMINISTRATIVE HEARING.**

At the administrative hearing, plaintiff amended her alleged disability onset date to January 30th, 2003, her 50th birthday. She testified that she had left knee pain which caused her problems climbing the stairs to her second-floor apartment that she had moved into five months prior, as well as prevented her from driving her manual-transmission car (AR 461–62). She testified that she had not worked in the past two years due to her illness, and that she received CalWORKs (formerly AFDC) payments for caring for her granddaughter, who lived in the apartment with her (*id*. at 462). She testified that she had last worked as a housekeeper in 2002 for about two hours a day, five days a week, but was fired when her employer noticed her health problems (*id*. at 493–95). In the previous fifteen years, she had worked full-time as a housekeeper, a security guard, and a cashier (*id*. at 463).

Plaintiff testified that her breathing had gotten worse over the past few years, and that she would sometimes run out of breath while talking (*id*. at 489). She said that she used an oxygen tank about once a week, which she carried with her at all times, including at the hearing (*id*. at 491–92). She also testified to having quit smoking five weeks prior to the hearing (*id*. at 491).

She testified that she had pain in her lower left back, as well as in both legs (*id*. at 465). She testified that these pains made bending, reaching, and stair climbing difficult (*ibid*.).

Plaintiff also testified to being depressed, for which she took Prozac once a day and/or when she was sad (*id*. at 474–75). She testified to remaining in the house for days at a time and

not being able to do anything. She stated that she enjoyed cooking, crocheting and knitting, but that she had not done any of these activities, except for cooking twice in the past month (*id*. at 488–89).

### 3. MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision (AR 26–28). This order will also briefly review both plaintiff's self-reported symptoms and the findings of each physician who examined her since the prior ALJ's decision on June 21, 2002.

In August 2002, plaintiff was treated at Summit Medical Center for abdominal pain and asthma exacerbation with a GI cocktail and an albuterol and Atrovent treatment and was discharged in good condition by Dr. Robert Young (*id*. at 50–51).

In September 2002, treating physician Dr. Adrian James refilled her prescriptions and recommended no heavy lifting and no prolonged sitting or standing (*id*. at 222–23).

In November, Dr. James recommended plaintiff for an MRI of the lumbar spine (AR 332), which revealed slightly asymmetric mild acquired central canal stenosis at L4-5, possibly resulting in impingement of the left L5 nerve root, as well as mild right L4-5 neural foraminal stenosis (*id*. at 323). There was no evidence of focal disc protrusion (*ibid*. at 323). On December 12, 2002, Dr. James completed a questionnaire for plaintiff's CalWORKs program opining that plaintiff could only sit, stand or walk for up to two hours at a time for a total of two to four hours per day because prolonged sitting, standing and walking increased back pain (*id*. at 324). Further restrictions included not using her left foot for repetitive movements due to left knee pain with intermittent swelling; avoiding exposure to dust, fumes, and smoke due to her asthma; and not working at heights due to back pain. He reported, however, that she was capable of carrying up to ten pounds occasionally, as well as stooping, kneeling, crouching, crawling and reaching (*id*. at 324–25).

From January through July of 2003, plaintiff was seen multiple times at North Oakland Medical Clinic and was diagnosed with degenerative joint disease ("DJD") in her left knee, chronic depression, hemorrhoids and asthma (*id*. at 208–20). Throughout this period, and with the exceptions of a DJD flare in her left knee around February 28 and spasms in her left foot

around July 10, all conditions were described as stable (*ibid.*). No specific treatment other than continuing to fill prescriptions for these conditions was apparent in the charts.

In January 2004, plaintiff was seen by Dr. Bruce Thompson at the North Oakland Medical Clinic. Dr. Thompson diagnosed plaintiff with non-active peptic ulcer disease, depression (bi-polar with depressive phase), stable asthma, well-controlled hypertensive cardiovascular disease, and DJD in the left knee. He noted a limited range of motion, crepitation, slight limp, and tenderness in her left knee. Treatment included refills of a number of medications for hypertension, arthritis, and asthma, as well as recommending Tylenol for daily pain and Motrin for severe knee pain (*id.* at 306–08).

After the hearing in August 2004, plaintiff was evaluated by orthopedic surgeon Dr. Richard Thunder. Dr. Thunder diagnosed plaintiff with mechanical low back pain and strain and left knee pain, possibly secondary to post-traumatic arthritis. Dr. Thunder determined that plaintiff could lift up to forty pounds occasionally and twenty pounds frequently. He further opined that plaintiff could sit without limitation and stand or walk for up to thirty minutes at a time, for up to four hours a day (*id.* at 344–48).

In September 2004, plaintiff was evaluated by psychiatrist Dr. Stefan Lampe at the request of the ALJ (*id.* at 26). Dr. Lampe diagnosed plaintiff with a major depressive disorder, single episode, in partial remission (*id.* at 350). He reported that her prognosis was good, having partially responded to a low dose of Paxil, and that a higher dose would further her improvement (*id.* at 351).

**ANALYSIS**

**1.    LEGAL STANDARD.**

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which

4

detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities"; thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

The claimant has the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. The ALJ must determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, (iv) whether the claimant is capable of performing his or her previous job, and (v) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v).

### 2. THE ALJ'S FIVE-STEP ANALYSIS.

In his decision, the ALJ found at step one of the sequential evaluation process that plaintiff had not worked since her amended alleged disability date of January 30, 2003 (AR 26). At step two, the ALJ found that plaintiff suffered from medically determinable impairments, diagnosed as mechanical low back pain, asthma, degenerative joint disease of the left knee, and depression (*ibid.*). The ALJ found such impairments to be "severe" (*ibid.*). At step three, however, the ALJ found that plaintiff's condition did not meet nor was medically equivalent to any listed in Appendix 1, Subpart P, Regulations No. 4. With respect to plaintiff's mental health, the ALJ found specifically that her condition did not meet or equal the criteria of Listing Sections 12.05C (mental retardation), 12.04 (affective disorders), or 12.08 (personality disorders) (*id.* at 27). With respect to plaintiff's physical health, the ALJ found specifically that her condition did not meet or equal the criteria of Listing Sections 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.02A (chronic obstructive pulmonary disease), or 3.03 (asthma) (*id.* at 30).

Turning to step four, the ALJ first determined plaintiff's residual functional capacity, finding that at all relevant times plaintiff retained the capacity for light, simple work, including standing and walking of 30 minutes at a time for up to four hours per work day (*id.* at 26).

5

The ALJ then found that plaintiff was capable of returning to her previous relevant work as a cashier. The ALJ thus found plaintiff to be "not disabled" at step four of the sequential evaluation process (*id*. at 30). It was unnecessary to reach step five.

Plaintiff now argues that the ALJ erred in four respects: (i) his evaluation of the medical opinions, (ii) his evaluation of plaintiff's credibility, (iii) his determination that plaintiff could return to her past relevant work as a cashier, and (iv) his failure to apply the Medical-Vocational Guidelines. Plaintiff also argues that the Appeals Council erred by failing to take into account new evidence submitted after the ALJ's decision.

### 3. THE ALJ DID NOT ERR IN HIS DECISION TO DENY BENEFITS.

For the following reasons, this order finds that neither the ALJ nor the Appeals Council erred in the decision to deny benefits to plaintiff.

#### A. The ALJ Did Not Err in His Evaluation of Medical Opinions.

The ALJ did not err in his evaluation of medical opinions regarding physical impairment nor in his evaluation of medical opinions regarding mental impairment.

##### *(1) Medical Opinions Regarding Physical Impairment.*

The ALJ did not err in his evaluation of conflicting medical opinions as to plaintiff's residual functional limitations. Where there is a conflict between the opinions of a treating physician and an examining physician, the ALJ may reject the treating physician's opinion if he makes findings setting forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citations omitted).

In December 2002, treating physician Dr. James opined that plaintiff could not lift more than ten pounds occasionally or sit, walk or stand for more than two hours at a time, for up to four hours a day (AR 324–25). In August 2004, however, examining physician Dr. Thunder opined that plaintiff could lift up to forty pounds occasionally and twenty pounds frequently (*id*. at 344–48). Dr. Thunder further opined that plaintiff could sit without limitation and stand or walk for up to thirty minutes at a time, for up to four hours a day (*ibid*.). The ALJ concluded that at all times since plaintiff's amended alleged onset date of January 30, 2003, she retained

6

1  the capacity for simple, light work, including sitting without limitation, and standing or walking
2  for up to thirty minutes at a time, for up to four hours a day (*id*. at 30). Thus, for the purposes
3  of the ALJ's determination of plaintiff's residual functional limitations, the ALJ rejected
4  Dr. James's opinion only with respect to plaintiff's ability to sit for an extended period of time.

5      Dr. Thunder's opinion constitutes substantial evidence because it is based on his
6  independent clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).
7  The ALJ noted that Dr. James's opinion was rejected by the state agency because it was based
8  on subjective complaints of knee pain that were unsupported by the objective medical evidence
9  (AR 29). The ALJ also found plaintiff's testimony to be less than fully credible (*id*. at 30),
10 thus further substantiating the ALJ's decision to discredit Dr. James's opinion. In light of the
11 reasons set forth by the ALJ, as well as the minimal disagreement between the two opinions,
12 this order finds that the ALJ did not err in his determination of plaintiff's residual functional
13 capacity.

### *(2)   Medical Opinions Regarding Mental Impairment.*

15     The ALJ did not err in his evaluation of medical opinions with respect to plaintiff's
16 alleged mental impairments. Based primarily on examining physician Stefan Lampe's report,
17 the ALJ determined that despite plaintiff's diagnosed depressive disorder, she retained the
18 mental capacity for simple, repetitive tasks (AR 27). Although treating physicians also
19 diagnosed plaintiff with depression and/or bi-polar disorder, none of their opinions indicated
20 that plaintiff lacked the mental capacity for simple, repetitive tasks. Thus, the ALJ did not err
21 in his determination of plaintiff's mental capacity.

### **B.   The ALJ Did Not Err in His Evaluation of Plaintiff's Credibility.**

23     The ALJ did not err in his evaluation of plaintiff's credibility. The ALJ must give
24 specific, clear and convincing reasons for rejecting plaintiff's allegations of disabling
25 symptoms. *Thomas v. BARNHART*, 278 F.3d 947, 959–60 (9th Cir. 2002). The ALJ is
26 responsible for determinations of credibility; thus, where the evidence is susceptible to more
27 than one rational interpretation, the decision of the ALJ must be upheld. *Andrews*, 53 F.3d at
28 1039. The ALJ pointed to the plaintiff's following activities in support of his finding that

7

plaintiff's testimony was not fully credible: moving into a new apartment located on the second floor of its building despite her alleged difficulty with stairs due to her left knee impairment; caring for her granddaughter and performing some cooking and socializing with friends; continuing to smoke cigarettes; and participating in Welfare-to-Work courses in conjunction with the California State Social Security program CalWORKs without interference from treating physicians (AR 30). Although potentially susceptible to more than one rational interpretation, plaintiff's moving into an apartment on the second floor and without an elevator could demonstrate that her knee impairment was not as severe as she claimed. The ALJ deemed her participation in Welfare-to-Work activities to demonstrate that her doctors believed she could participate in at least some work activities (*id*. at 28). Her continued smoking against her doctors' advice could be interpreted as a lack of dedication to her own health, and also suggests that her asthma was not as severe as claimed. Additionally, the ALJ found the level of plaintiff's subjective reports of pain to be unsupported by the objective medical evidence available (*id*. at 29). Because plaintiff's claimed level of pain is unsupported by the objective medical evidence, the credibility of plaintiff's testimony with respect to her alleged impairments was put into question. Thus, in light of the reasons set forth by the ALJ, his determination of plaintiff's credibility must be upheld.

**C.    The ALJ Did Not Err in His Determination That Plaintiff Could Return to Past Relevant Work.**

The ALJ did not err in finding that plaintiff could return to her past relevant work as a cashier. Substantial gainful activity is work that involves significant physical or mental activities, and is usually done for pay or profit whether or not a profit is actually realized. 20 C.F.R. 416.972 (2008). Plaintiff's argument that the amount she earned as a cashier was insufficient to constitute substantial gainful activity is therefore unpersuasive.

**D.    The ALJ Did Not Err by Not Applying The Medical-Vocational Guidelines.**

The ALJ did not err by not applying the Medical-Vocational Guidelines at 20 C.F.R. Part 404 Appendix 2. The ALJ found at step four of the sequential evaluation that plaintiff retained the residual functional capacity to perform her past relevant work as a cashier (AR 30).

8

For this reason, the ALJ was not required to use the Medical-Vocational Guidelines to determine plaintiff's ability to perform other work.

### E. The Appeals Council Did Not Err By Not Considering New Post-Decision Evidence.

The Appeals Council did not err by not considering the new evidence from Highland General Hospital and treating therapist Joan Alexander because it was outside of the relevant period of this case. The relevant period of this case is from January 30, 2003 (the alleged disability date) through December 21, 2004 (the date of the ALJ's decision). The new evidence documented a hospitalization on January 14, 2005, for an asthma exacerbation, as well as other asthma related hospital visits thereafter (Pl. Br. 17–18). The new evidence also included reports from therapist Joan Alexander, who treated plaintiff from November 30, 2005, to March 15, 2006. All such evidence pertained to plaintiff's disability after the relevant period of this case, and thus cannot establish disability in this case.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: March 27, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9